SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

DENAN AINSLEY,

Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICERS JOHN
DOES 1 through 10, individually and in their official
capacities (the name John Doe being fictitious, as the true
names are presently unknown),

Defendants.

----------------------------------------------------------------------- x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 3 0 2011 ★

COGAN J.
BROOKLYN OFFICE

**COMPLAINT**
CV 11 - 5837
Jury Trial Demanded

5837

## PRELIMINARY STATEMENT

1.      This is a civil rights action alleging that the City of New York and several New

York City Police Officers violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth

and Fourteenth Amendments to the United States Constitution. Specifically, plaintiff alleges that,

on August 5, 2011 at around 3:00 p.m. defendants falsely arrested him, employed excessive

force, maliciously prosecuted him, and made false allegations about him to the Kings County

District Attorney's Office. Plaintiff seeks compensatory and punitive damages, attorneys' fees

and costs, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, Fifth and

Fourteenth Amendments to the United States Constitution, Article 1 of the New York

Constitution, and New York common law. Jurisdiction is conferred upon this Court by 28

U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367

3.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES

4.    Plaintiff is a citizen of the United States and a resident of Kings County in the City and State of New York.

5.    The City of New York (the "City") is a municipal corporation organized under the laws of the State of New York.

6.    Police Officers John Does 1-4 (the "officers" or the "Does") are members of the New York City Police Department who were acting under color of state law and in their capacities as City law enforcement officers at all relevant times. The Does are liable for directly participating in the unlawful acts described herein and for failing to intervene to protect plaintiff from unconstitutional conduct. The defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

7.    On August 5, 2011 at approximately 3:00 p.m., Plaintiff was lawfully operating his vehicle in the vicinity of 98th Street and Sutter Avenue in Brooklyn, New York.

8.    Plaintiff's vehicle was stopped at a red light when a New York City Police Officer on foot approached Plaintiff's vehicle and tapped on the window.

9.    When Plaintiff opened his window, the Officer asked for Plaintiff's license.

10.    Plaintiff asked why the Officer was asking for his license, and the Officer responded that Plaintiff's window was tinted.

2

11.   At the time, Plaintiff's side and front windows were without tints, and the vehicle was equipped with two side mirrors, in full compliance with New York Vehicle and Traffic Law ("NY V.T.L.") § 375 12-a(b).

12.   Plaintiff told the Officer that he kept the back window tints so his children would not overheat in the sun when they sat in the backseats, and that a Kings County judge had told him after a recent summons that removing the front and side tints was all that the N.Y. V.T.L. Required.

13.   The Officer rejected Plaintiff's explanation and asked for his license a second time to write him a ticket.

14.   Plaintiff complied with the Officer's request, turned over his license and pulled over when the light changed so as to not obstruct traffic.

15.   As Plaintiff attempted to put the car into park, the car jerked forward.

16.   The Officer then demanded that Plaintiff step out of the car.

17.   When plaintiff hesitated, the Officer started kicking the side of Plaintiff's door and breaking the glass with her baton.

18.   Plaintiff, frightened of what the Officer might do, got out his cellphone and dialed 911.

19.   Plaintiff then continued to wait inside his vehicle until he saw a police van approaching.

20.   Plaintiff, thinking the police van was there to answer his 911 call, got out of his car.

21.   The Officers in the van pulled a gun out on Plaintiff, but did not place him under arrest.

3

22.     As Plaintiff stood outside his car, he spoke with the Officer who initially stopped him.

23.     Another Officer asked for Plaintiff's consent to search the car, but the Officer he was speaking with stated there was no need for Plaintiff's consent because he was now under arrest.

24.     Plaintiff was then arrested and placed in the back of the police van.

25.     Plaintiff tried to explain that he did nothing wrong, to which a female police Officer replied "we're the cops anyway".

26.     Plaintiff's handcuffs were exceedingly tight, and when Plaintiff asked that they be loosened his request was ignored.

27.     One Officer stated that Plaintiff had been resisting arrest, which prompted the other Officers to laugh.

28.     The next morning, on August 6, 2011, Plaintiff was transported to Brooklyn Central Booking, where he was charged with Resisting Arrest, Obstructing Governmental Administration and Disorderly Conduct.

29.     Defendant officers misrepresented to the Kings County District Attorney's Office that Plaintiff had committed the offenses of Resisting Arrest, Obstructing Governmental Administration and Disorderly Conduct.

30.     The next morning, on August 7, 2011, Plaintiff was arraigned in Kings County Criminal Court where his criminal charges were adjourned in contemplation of dismissal.

31.     Plaintiff was released at his arraignment, close to 48 hours after his arrest.

32.     At no point was Plaintiff ever issued a summons for a tinted window.

4

33. Plaintiff was deprived of his liberty, assaulted, battered, suffered emotional distress, mental anguish, pain, fear, anxiety, embarrassment, humiliation, damage to his reputation and loss of income.

34. Plaintiff suffers from an ulcer, which his arrest and incarceration aggravated, and for which he sought medical treatment.

### FIRST CLAIM

### (§1983 FALSE ARREST)

21. Plaintiff repeats the foregoing allegations.

22. Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.

23. Plaintiff was aware of his confinement and did not consent to it.

24. The confinement was not otherwise privileged.

25. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages alleged.

### SECOND CLAIM

### (§1983 UNREASONABLE FORCE)

26. Plaintiff repeats the foregoing allegations.

27. Defendants violated the Fourth and Fourteenth Amendments because they used a degree of force on Plaintiff that was unreasonable because it was unnecessary under the circumstances.

28. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages alleged.

### THIRD CLAIM

5

## (§1983 FABRICATION OF EVIDENCE)

29.     Plaintiff repeats the foregoing allegations.

30.     The individual Defendants created false evidence against Plaintiff and forwarded such false evidence to the Kings County District Attorney's Office.

31.     In creating such false evidence, the Defendants violated Plaintiff's constitutional right to due process.

32.     The aforesaid conduct by the City of New York violated Plaintiffs' rights under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution.

**33.**     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages alleged.

## FOURTH CLAIM

## (§1983 "MONELL" CLAIM)

34.     Plaintiff repeats the foregoing allegations.

35.     The City, through policies, practices and customs, directly caused the constitutional violations suffered by Plaintiff.

36.     The City, through its police department, has had and still has hiring, training, promotion and retention practices that it knows will lead to the hiring, training, promotion of police officers unable to discharge their duties in accordance with the constitution.

37.     The City, through its police department, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence and perjury.

6

38.     The City, at all relevant times, was aware that these individual Defendants routinely commit constitutional violations such as those at issue here and has failed to change its policies, practices and customs to stop this behavior.

39.     The City, at all relevant times, was aware that these individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

40.     These policies, practices and customs were the moving force behind Plaintiff's injuries.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.     Compensatory damages in an amount to be determined by a jury;

b.     Punitive damages in an amount to be determined by a jury;

c.     Costs, interest and attorney's fees;

d.     Such other and further relief as the Court may deem just and proper.

DATED:     November 29, 2011

New York, New York

ROBERT MARINELLI
Attorney at Law
305 Broadway, 14th Floor
New York, New York 10007
(212) 822-1427

7